IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03218-PAB-GPG

WELLS FARGO BANK, N.A.,

    Plaintiff,

v.

MESH SUTURE INC.,
MARK A. SCHWARTZ,
RANDA DUMANIAN,
GREGORY A. DUMANIAN, and
ADOM DUMANIAN,

    Defendants,

v.

ZABELLE CROSSON,

    Intervenor Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Urgent Motion Requesting Stay Pending Appeal [Docket No. 92] filed by defendant Mark A. Schwartz ("Schwartz").[1] Defendants Gregory A. Dumanian, Randa Dumanian, and Adom Dumanian (together, "the Dumanians") filed a response opposing the motion. Docket No. 102.[2] Intervenor

---

[1] The motion is purportedly filed on behalf of Schwartz and defendant Mesh Suture, Inc. However, Magistrate Judge Gordon P. Gallagher has denied Schwartz's motion to appear on behalf of Mesh Suture, Inc. *See* Docket No. 107. Thus, the Court construes the motion as filed on behalf of Schwartz only.

[2] The response is also purportedly filed on behalf of Mesh Suture, Inc. Magistrate Judge Gallagher has ordered the appointed receiver to "retain counsel for the limited purpose of reviewing whether representation of Mesh Suture . . . is

defendant Zabelle Crosson ("Crosson") joined in the Dumanians' response. Docket No. 103. Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") has not filed a response.

## I. BACKGROUND

This interpleader action arises out of a dispute as to who controls the bank account of defendant Mesh Suture, Inc. ("Mesh Suture") at Wells Fargo (the "Mesh Suture bank account") – Schwartz or the Dumanians. Docket No. 1 at 1-2, ¶¶ 1-2.[3] On November 13, 2019, Wells Fargo filed this interpleader action. Docket No. 1. Wells Fargo seeks to interplead the funds in the Mesh Suture bank account into the Registry of the Court in order for Mesh Suture, the Dumanians, and Schwartz to make their legal claims to the funds. *Id*. at 5, ¶ 32. The Dumanians filed an answer (purporting to have authority to act on behalf of Mesh Suture) on November 19, 2019. Docket No. 9. Schwartz did not file an answer or other responsive pleading; the deadline to do so expired on January 9, 2020.

On November 23, 2019, Gregory A. Dumanian and Randa Dumanian filed an "emergency motion" to appoint a receiver for the Mesh Suture bank account during the pendency of this interpleader action. Docket No. 11. The emergency motion argued that a receiver was necessary to pay Mesh Suture invoices from the Mesh Suture bank account while this action is pending. *Id*. at 9. Magistrate Judge Gordon P. Gallagher

---

necessary." Docket No. 107 at 4-5. Given Magistrate Judge Gallagher's order and that control of Mesh Suture is one of the issues central to this proceeding, the Court construes all motions filed by the Dumanians' counsel, Matthew E. Johnson and Kimberly Berve of Dowd Bennett LLP, as filed on behalf of the Dumanians only.

[3] More detailed background can be found in the Court's January 29, 2020 order [Docket No. 40]; the Court will restate only those facts that are relevant to resolving this motion.

2

set a hearing on the receiver motion for January 31, 2020.  Docket No. 27.  Schwartz did not file a response to the motion before the January 21 deadline set by the magistrate judge.  *See* Docket No. 26.

On January 9, 2020, Schwartz filed a Chapter 11 bankruptcy petition, purportedly on behalf of Mesh Suture, in the United States Bankruptcy Court for the District of Puerto Rico (the "Puerto Rico bankruptcy case").  Docket No. 29 at 2; *see also* Docket No. 29-1 (bankruptcy petition); No. 20-00031-MCF11 (Bankr. P.R.).  On January 10, 2020, the Dumanians filed another "emergency motion," seeking a declaration that the automatic stay provisions of 11 U.S.C. § 362(a), which are typically triggered by a bankruptcy proceeding, do not apply to this action (the "automatic stay motion").  Docket No. 29.  Schwartz, through counsel, filed a response, arguing that (1) the Court does not have subject matter jurisdiction over this action because the claimants are all citizens of Puerto Rico, (2) the Court does not have jurisdiction to hear the automatic stay motion because the Bankruptcy Court in Puerto Rico has exclusive jurisdiction to grant relief from the automatic stay, and (3) the automatic stay should remain in place until the Bankruptcy Court in Puerto Rico decides how to proceed.  Docket No. 33.

On January 17, 2020, Crosson, who serves on the Mesh Suture Board of Directors, moved to intervene in this case, Docket No. 35, and joined the automatic stay motion pending her intervention.  Docket No. 37.

On January 29, 2020, the Court issued an order (the "automatic stay order") granting the automatic stay motion in part.  Docket No. 40.  First, the Court concluded that the question of subject matter jurisdiction was not ripe for decision and set a briefing schedule for the parties.  *Id*. at 4-5.  However, the Court ordered that the action

3

would proceed pending resolution of the jurisdictional issue. *Id*. at 5. Next, the Court held that it had jurisdiction to decide whether the automatic stay applied. *Id*. (citing *Amoco Pipeline Co. v. Admiral Crude Oil Corp.*, 490 F.2d 114, 116 (10th Cir. 1974)). Finally, the Court determined that the automatic stay did not apply to this interpleader action, as the purpose of the action is "to determine which claimant has the right to the funds contained in the Mesh Suture [bank] account" and thus did not fall within 11 U.S.C. § 362(a)(3). *Id*. at 6.

On January 31, 2020, Magistrate Judge Gallagher held a hearing on the receiver motion. Docket No. 75.[4] At the conclusion of the hearing, he orally granted Crosson's motion to intervene and granted the receiver motion. *Id*. On February 11, 2020, Magistrate Judge Gallagher issued a written order granting the receiver motion (the "receiver order"). Docket No. 87. In the receiver order, Magistrate Judge Gallagher considered the factors outlined in *Waag v. Hamm*, 10 F. Supp. 2d 1191, 1193 (D. Colo. 1998), and determined that "the appointment of a receiver is both appropriate and necessary based on the current facts." *Id*. at 5. Magistrate Judge Gallagher noted that the Dumanians have alleged "an imminent danger that the funds [in the Mesh Suture bank account] will be lost, concealed, or diminished in value if a receiver is not appointed – and their claim appears valid." *Id.* Magistrate Judge Gallagher further

---

[4] Between the issuance of the automatic stay order on January 29 and the hearing on January 31, Schwartz filed a barrage of motions, both through his then-counsel and on his own behalf. *See* Docket Nos. 43, 49, 50, 51, 52, 57, 59, 63, 64, 65, 69, 70, and 73. Save for a motion for Schwartz's then-counsel to appear by telephone at the hearing, *see* Docket No. 62, all of the motions, which were generally aimed at continuing the January 31 hearing, were denied or stricken for various reasons. *See* Docket Nos. 48, 56, 66, 67, 68, 71, 72, 76.

concluded that "it does not appear that Schwartz will be harmed in any way if a receiver is appointed, as he too claims to be working in the best interest of Mesh Suture." *Id*. at 6. Magistrate Judge Gallagher appointed Cordes & Company LLP as the receiver. *Id*.

On February 12, 2020, Schwartz, now proceeding *pro se*, filed a notice of appeal with the Tenth Circuit. Docket No. 90; *see also* No. 20-1041 (10th Cir.).[5] Schwartz appeals (1) the automatic stay order, Docket No. 40, (2) the minute entry from the January 31, 2020 hearing, Docket No. 75, and (3) the receiver order, Docket No. 75. On February 13, 2020, Schwartz filed the instant motion, requesting that the Court stay "this case and the enforcement of its orders" until the Tenth Circuit resolves the appeal. Docket No. 92 at 1. Schwartz argues that the receiver order and the automatic stay order will "result in the payment of [Mesh Suture's] funds to a [r]eceiver which will disburse those assets during [Mesh Suture's] bankruptcy, in violation of the automatic stay." *Id*. at 1. The Dumanians filed a response, Docket No. 102, which Crosson joined. Docket No. 103.

Meanwhile, in accordance with the automatic stay order, the Dumanians, Wells Fargo, and Crosson filed briefs addressing Schwartz's subject matter jurisdiction argument. Docket Nos. 84, 85, 86. The Dumanians argue that they are all citizens of Illinois. Docket No. 84. Wells Fargo argues that the Dumanians are citizens of Illinois, that Mesh Suture is a citizen of Puerto Rico and/or Wyoming, and that Schwartz is a citizen of Colorado. Docket No. 85. Crosson argues that she is a citizen of California.

---

[5] Schwartz is a licensed attorney in Colorado; thus, the Court does not extend a liberal construction to his motions. *See Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).

Docket No. 86. Schwartz filed a reply on February 23, 2020, arguing that he, the Dumanians, and Mesh Suture are all citizens of Puerto Rico. Docket No. 108.[6]

On February 24, 2020, the Bankruptcy Court for the District of Puerto Rico dismissed the Puerto Rico bankruptcy case. See Docket No. 112-1. On February 25, 2020, the Tenth Circuit *sua sponte* issued an order to show cause and suspended merits briefing. See No. 20-1041, Order dated Feb. 25, 2020 (the "show cause order"). As relevant here, the show cause order noted that "[i]t is . . . not clear how the district court's decisions are appealable under 28 U.S.C. § 1292(a)(2)." *Id.* at 2. The Tenth Circuit observed that, in light of the dismissal of the Puerto Rico bankruptcy case, it "appears that any attempted appeal of the [automatic stay order] is moot." *Id.* at 3. The Tenth Circuit further observed that "[a] decision entered by a magistrate judge" – such as the receiver order – "is generally not immediately appealable." *Id.*

---

[6] Schwartz styles this reply as a "reply in support of his motion to dismiss/stay and objections to the jurisdiction of this Honorable Court." Docket No. 108 at 1. The Court has already noted that Schwartz's response to the automatic stay motion was not a motion to dismiss. See Docket No. 40 at n.1 (citing D.C.COLOLCivR 7.1(d)). Similarly, to the extent that Schwartz's reply here is purportedly a motion to dismiss on any basis other than lack of diversity jurisdiction as initially raised in Schwartz's response to the automatic stay motion, such motion is not properly before the Court. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion."); *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[R]eply briefs *reply* to arguments made in the response brief – they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."). If Schwartz – who has still not answered the interpleader complaint – wants to present further objections to jurisdiction or venue, he must raise those arguments in a motion to dismiss, where they may be evaluated in an appropriate fashion.

## II.  ANALYSIS

### A.  Subject Matter Jurisdiction

Before turning to the merits of the instant motion, the Court considers Schwartz's argument that the entire action must be dismissed for lack of subject matter jurisdiction.

Wells Fargo brings this interpleader action pursuant to 28 U.S.C. § 1335, which requires "[t]wo or more adverse claimants, of diverse citizenship" in order for the district court to have jurisdiction.  This provision requires only "minimal diversity" – "diversity of citizenship between two or more claimants."  *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 (1967).[7]  The interpleader complaint alleges that Mesh Suture is a citizen of Puerto Rico, that Schwartz is a "resident" of Colorado, and that the Dumanians are citizens of Illinois.  Docket No. 1 at 2, ¶¶ 6-10.  Schwartz argues that he and the Dumanians are, in fact, citizens of Puerto Rico; thus, all of the claimants are citizens of Puerto Rico and there is no diversity of citizenship.  Docket No. 33 at 3-4.

#### 1.  *Mesh Suture*

Mesh Suture is a citizen of Puerto Rico.[8]  A corporation is deemed to be a citizen of "every State and foreign state by which it has been incorporated and of the State or

---

[7] In his reply brief, Schwartz now contends that "complete diversity" must be required.  Docket No. 108 at 5-7.  As Schwartz does not attempt to explain why the minimal diversity requirement of 28 U.S.C. § 1335 would not apply to this case, the Court rejects this argument.

[8] Wells Fargo has offered evidence that Schwartz recently attempted to incorporate Mesh Suture in Wyoming.  *See* Docket No. 85-1 (Colorado Statement of Foreign Entity Authority filed by Schwartz on November 14, 2019); Docket No. 85-2 (Colorado Certificate of Fact of Good Standing for Mesh Suture, Inc., as "an entity formed or registered under the law of Wyoming").  As minimal diversity exists whether or not Mesh Suture is also a citizen of Wyoming, the Court need not determine whether the Wyoming incorporation is valid.

7

foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The interpleader complaint alleges, and the parties all agree, that Mesh Suture is incorporated in and has its principal place of business in Puerto Rico. *See* Docket No. 1 at 2, ¶ 6, Docket No. 9 at 3, ¶ 6; Docket No. 33 at 3; Docket No. 85 at 6-7; Docket No. 108 at 4-5. Thus, the Court need only identify one other defendant who is not a citizen of Puerto Rico in order to have jurisdiction over this interpleader action.

### 2. Gregory Dumanian

"An individual's state citizenship is equivalent to domicile." *Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006). Mere residency in a state without an intent to remain is not determinative of a party's citizenship for purposes of diversity jurisdiction. *See Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) ("[A] person acquires domicile in a state when the person resides there and intends to remain there indefinitely."); *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972) ("[A]llegations of mere 'residence' may not be equated with 'citizenship' for the purposes of establishing diversity."); *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." (citations omitted)). The inquiry as to an individual's domicile "must be done on a case by case basis," taking into account factors such as "the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's

license and automobile registration; payment of taxes; as well as several other aspects of human life and activity." 13E Charles Alan Wright et al., *Federal Practice & Procedure* § 3612 (3d ed. Aug. 2019 update).

In connection with his response brief, Gregory Dumanian submitted a declaration attesting that he: (1) has resided in Chicago, Illinois, since July 1, 1996; (2) has been employed by Northwestern University since July 1, 1996; (3) bought his current home, located in Chicago, Illinois, in 1997; (4) has been registered to vote in Cook County, Illinois, since 1996; (5) has filed state taxes in Illinois for over 20 years; (6) only owns personal property, including a vehicle, located in Illinois; (7) has an Illinois driver's license; (8) has registered his vehicle in Illinois; and (9) maintains a personal checking account, savings account, and credit cards in Illinois. Docket No. 84-1 at 2-4, ¶¶ 5, 8, 9, 15-17. The Court has little difficulty concluding that Gregory Dumanian's affidavit, viewed in light of the relevant factors, establishes that he is domiciled in Illinois.

In reply, Schwartz contends that Gregory Dumanian is a citizen of Puerto Rico. Docket No. 108 at 3, ¶¶ 13, 15. Schwartz relies on a document indicating that Gregory Dumanian was awarded a tax exemption by the Government of Puerto Rico on February 27, 2017 (the "Tax Grant"). Docket No. 108-2. Schwartz contends that this conclusively proves that Gregory Dumanian is domiciled in Puerto Rico. The Court disagrees. First, the Tax Grant is not evidence that Gregory Dumanian was, at any point, a resident of Puerto Rico. Rather, the Tax Grant is evidence that Gregory Dumanian "submitted facts indicating that he meets the requirements to be treated as a 'Resident Individual Investor' *or* that he will meet those requirements within one (1) year from the date of" the Tax Grant. *See* Docket No. 108-2 at 1. The Tax Grant also states

9

that it "shall not become effective until [Gregory Dumanian] becomes a resident of Puerto Rico."  *Id*., ¶ 2.  Schwartz offers no evidence that Gregory Dumanian ever became a resident of Puerto Rico or accepted the benefits of the Tax Grant.[9]  Indeed, Gregory Dumanian denies that he ever accepted the grant.  *See* Docket No. 84-1 at 3-4, ¶ 12 (explaining that he "never followed through on the requirements . . . to take advantage of the [Tax] Grant").  Moreover, even assuming *arguendo* that Gregory Dumanian accepted the Tax Grant, the Tax Grant is evidence only of his residence, not his domicile.  *See Middleton*, 749 F.3d at 1200 ("[A] person acquires domicile in a state when the person resides there and intends to remain there indefinitely.").  In the Tenth Circuit, there is a rebuttable presumption "in favor of an established domicile over a newly acquired one."  *Chaara v. Intel. Corp.*, 410 F. Supp. 2d 1080, 1091 (D.N.M. 2005) (quoting *Janis v. Story & Associates*, 124 F.3d 216, 3 (10th Cir. 1997)).  The test for determining when a person has left an old domicile and acquired a new one, thereby rebutting the presumption in favor of an established domicile, is as follows: "First, residence in a new domicile, and second, the intention to remain there indefinitely." *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).  Schwartz has put forward no evidence indicating that Gregory Dumanian, even if he is currently a resident of Puerto Rico, intends to remain in Puerto Rico indefinitely.  Thus, the Court rejects Schwartz's argument that Gregory Dumanian is a citizen of Puerto Rico.

---

[9] Schwartz's statements in his reply brief that the Dumanians have a physical and postal address in Puerto Rico, that they "keep their belongings and personal property" there, and that their vehicle is owned and registered in Puerto Rico are attorney argument not supported by any evidence.  *See* Docket No. 108 at 3, ¶ 13, and at 7-8, ¶ 33.

Because Mesh Suture is a citizen of Puerto Rico and Gregory Dumanian is a citizen of Illinois, minimal diversity exists and the Court has subject matter jurisdiction.

B. **Motion to Stay**

Schwartz moves to stay "the enforcement of [the Court's] orders" until the Tenth Circuit resolves the merits of his appeal of the automatic stay order and the receiver order. Docket No. 92 at 1.[10]

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal citations and quotations omitted). The factors governing issuance of a stay pending appeal are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also* 11 *Fed. Prac. & Proc.* § 2904. "The first two factors of the traditional standard are the most critical," as "more than a mere possibility of relief is

---

[10] Schwartz filed this "urgent" motion to stay on February 13, 2020, and requested that the Court give other parties until February 17, 2020 to respond – a period of one business day, as the 17th was President's Day. *See* Docket No. 92 at 2, ¶ 5. In accordance with the Court's order, Docket No. 93, the Dumanians and Crosson filed responses on February 18, 2020. On February 21, 2020, three business days after the responses were filed, Schwartz requested an extension of five business days to file a reply brief, belying his contentions about the motion's urgency. Docket No. 105. In any event, the Court struck that motion for unrelated reasons, and Schwartz is yet to file a reply brief. This is not an obstacle to resolving the motion to stay. *See, e.g.*, *Poel v. Webber*, 899 F. Supp. 2d 1155, 1159 (D.N.M. 2012) ("[A] court need not wait for a reply brief before reaching its decision.").

11

required" and "showing some possibility of irreparable injury fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35 (internal citations, quotations, and alterations omitted).

Schwartz has not made a sufficient showing as to the first two factors to merit a stay of proceedings and of this Court's orders pending appeal.

First, the Court finds that there is no basis for a stay because the dismissal of the bankruptcy case mooted the automatic stay order. "Under Article III of the Constitution [federal courts] may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988); *see also Wiley v. Nat'l Collegiate Athletic Ass'n*, 612 F.2d 473, 475 (10th Cir. 1979) (noting that mootness "has its constitutional origin in the 'case or controversy' limitation of Article III"). In the mootness inquiry, "[t]he crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (internal quotations and alterations omitted). The Court entering a stay of the automatic stay order would have no impact in the real world because the Puerto Rico bankruptcy case has been dismissed. The automatic stay order concluded that the Puerto Rico bankruptcy case did not act to automatically stay proceedings in this action. *See* Docket No. 40 at 6-7. The goal of Schwartz's appeal – and the instant motion – is to undo that decision and apply the automatic stay from the Puerto Rico bankruptcy case to this action. However, with the Puerto Rico bankruptcy case dismissed, there is no automatic stay to apply to this action, even if this Court or the Tenth Circuit were to reach the merits of Schwartz's

challenge to the automatic stay order. Thus, Schwartz has no likelihood of success on the merits of his appeal of the automatic stay order because, as the Tenth Circuit indicated in its show cause order, it "appears that any attempted appeal of the [automatic stay order] is moot." *See* No. 20-1041, show cause order at 3.

As to the receiver order, the Court finds that Schwartz faces insurmountable obstacles, both procedural and substantive, to achieving success on the merits. Procedurally, Schwartz's appeal is improper, as he has failed to file any objections to the receiver order, an order issued by a magistrate judge, with this Court. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in [a magistrate judge's nondispositive] order not timely objected to."); *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 706 (10th Cir. 1998) (applying Rule 72(a) and holding that a party's "failure to appeal the magistrate's ruling to the district court precludes it from raising the issue on appeal to [the Tenth Circuit]").[11] Substantively, Schwartz's arguments appear to be moot. At the hearing on the receiver motion, the only argument offered by Schwartz's then-counsel was that "appointment of a receiver is premature . . . until the briefing on the jurisdictional issue can be completed." *See* Docket No. 77 at 23. As the Court has determined that it has subject matter jurisdiction over the action, this argument is moot. In the instant motion, Schwartz's argument is that appointment of a receiver "will result in the payment of [Mesh Suture's] funds to a [r]eceiver which will disburse those assets during [Mesh Suture's] bankruptcy, in

---

[11] Two days after the deadline to file objections passed, Schwartz filed a motion for leave to late-file objections. Docket No. 115. The Court will deny that motion in a separate order.

13

violation of the automatic stay." *See* Docket No. 92 at 1. All of Schwartz's legal analysis on the merits is based upon the notion that this action should have been subject to an automatic stay. *See id.* at 5-10.[12] Schwartz admits that "the purpose of [the motion to stay] is to sustain and uphold the automatic stay provisions which are already in effect." *See id.* at 11 (emphasis removed). As discussed above, the Puerto Rico bankruptcy case has been dismissed, and Mesh Suture is not in a bankruptcy proceeding. Simply put, there is no danger that the receiver order will cause any damage to a bankruptcy estate. Schwartz does not otherwise argue that it was an abuse of discretion to appoint a receiver. *See Sec. & Exch. Comm'n v. Scoville*, 913 F.3d 1204, 1213 (10th Cir. 2019) (noting that the Tenth Circuit "reviews the district court's order appointing a receiver, and refusing to set aside that order, for an abuse of discretion"). Thus, Schwartz has failed to demonstrate any likelihood of success on the merits as to his appeal of the receiver order.

Even assuming *arguendo* that Schwartz has some likelihood of success on the merits of his challenge to the receiver order, Schwartz fails to identify any irreparable harm that he would be caused by the receiver order. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). "To show a threat of irreparable harm, a plaintiff must demonstrate 'a significant risk that he or she will experience harm that

---

[12] Schwartz devotes a scant paragraph to an argument that the receiver motion was a "clear breach and violation" of a settlement agreement between Schwartz and Gregory Dumanian. *See* Docket No. 92 at 6, ¶ 8. This argument, which was not raised before the magistrate judge, does not persuade the Court that Schwartz has any likelihood of success on the merits.

cannot be compensated after the fact by money damages.'" *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)). Schwartz's argument as to irreparable harm – to the extent that he does not rely on the now-dismissed Puerto Rico bankruptcy case – is that Mesh Suture will suffer money damages by the receiver paying invoices as directed by the receiver order. *See* Docket No. 92 at 11 (stating that "[o]nce [Mesh Suture's] funds are distributed, they are gone").[13] However, Schwartz fails to explain why any damages sustained by Mesh Suture cannot be compensated after the fact by money damages. *See Fish*, 840 F.3d at 751; *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2017) (holding that a company had not shown irreparable harm where, if the company ultimately succeeded, "money damages could be quantified and would adequately make the company whole" (internal quotations and alterations omitted)).[14] Thus, Schwartz has not shown that he will suffer irreparable harm while the Tenth Circuit considers his appeal.

Because Schwartz has not made an adequate showing of the likelihood of success on the merits of his appeal or irreparable harm from the denial of a stay

---

[13] Schwartz also argues that "the potential mooting of [Mesh Suture's] appeal if a stay is not granted, is itself irreparable harm." *See* Docket No. 92 at 13, ¶ 27 (citing *In re Family Showtime Theatres*, 67 B.R. 542 (Bankr. S.D.N.Y. 1986). *Family Showtime Theatres* held that failure to stay an order of the bankruptcy court pending appeal can constitute irreparable harm where a failure to grant a stay would lead the debtor to "probably cease to exist." *Id*. at 551-52. *Family Showtime Theatres* does not apply here, as no party is subject to a bankruptcy proceeding.

[14] Neither party briefed the question as to whether Schwartz has standing to assert, as the basis for irreparable harm to himself, money damages sustained by Mesh Suture.

pending appeal, the Court will deny Schwartz's motion to stay.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Urgent Motion Requesting Stay Pending Appeal [Docket No. 92] is **DENIED**.

DATED March 3, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge