IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WELLS FARGO BANK, N.A.,
     Plaintiff,
        v.                          Civil Action No. 19-cv-03218-PAB-GPG

MESH SUTURE INC., MARK A.
SCHWARTZ, RANDA DUMANIAN,
GREGORY A. DUMANIAN,
and ADOM DUMANIAN,
     Defendants.

---

**DEFENDANT MARK SCHWARTZ'S OPPOSITION TO PLAINTIFF WELLS FARGO'S
MOTION TO INTERPLEAD FUNDS [DOCKET NO. 122]**

**TO THE HONORABLE COURT**:

     **COMES NOW**, Defendant Mark A. Schwartz, MD JD, pro se, and files this Motion in Opposition to Plaintiff Wells Fargo Bank, N.A.'s ("Wells") Motion to Interplead Funds [Docket No. 122], and states as follows:

**BACKGROUND AND PROCEDURAL HISTORY**

1.     This interpleader action arises out of a dispute as to who controls the bank account of defendant Mesh Suture, Inc. ("Mesh Suture") at Wells Fargo (the "Account" or "Mesh Suture bank account") - Schwartz or the Dumanians. Docket No. 1 at 1-2, ¶¶ 1-2.

2.     On September 3, 2019 Dumanian made an adverse claim against the Mesh Suture bank account which resulted in Wells Fargo freezing the Mesh Suture bank account on September 17, 2019. (**Exhibit 1**).

3.     On October 11, 2019,  Dumanian filed suit in the United States District Court for the District of Northern Illinois, captioned as Gregory Dumanian, MD et al. v. Mark Schwartz, Case No 19-cv-6771.

4.      On November 13, 2019, Wells Fargo filed this interpleader action, pursuant to 28 U.S.C. § 1335, seeking to interplead the funds in the Mesh Suture bank account into the Registry of the Court in order for Mesh Suture, the Dumanians, and Schwartz to make their legal claims to the funds. Docket No. 1 at 5, ¶ 32.

5.      On November 19, 2019, the Dumanians waived service and filed an answer (purporting to have authority to act on behalf of Mesh Suture). Docket No. 9. In their Answer, the Dumanians state that the control dispute is "the subject of the Dumanians' lawsuit against Schwartz that was filed on October 11, 2019, in the United States District Court for the District of Northern Illinois which is captioned as *Gregory Dumanian, MD et al. v. Mark Schwartz*, Case No 19-cv-6771 (the "Illinois Lawsuit")" and seeks to rescind "certain Invalid Board Resolutions and an Invalid Settlement Agreement" due to "duress"; *Id.* at ¶ 1"Mesh Suture and the Dumanians admit … that the issue of control over Mesh Suture is the subject of the Illinois Lawsuit, which among other things, seeks declaratory judgments as to the parties' rights to designate directors to Mesh Suture's Board of Directors and as to the August 31, 2019, termination of Schwartz's employment as CEO of Mesh Suture by Dr. Dumanian pursuant to Schwartz's employment agreement with Mesh Suture." *Id.* at ¶ 2.

6.      On November 23, 2019, the Dumanians (purporting to have authority to act on behalf of Mesh Suture) filed a Motion to Appoint a Receiver, Docket No. 11, which Plaintiff did not oppose, Docket No. 22, and which this Court granted on January 31, 2020, Docket No. 40.

7.      On January 9, 2020, Schwartz filed a Chapter 11 bankruptcy petition purportedly on behalf of Mesh Suture, in the United States Bankruptcy Court for the District of Puerto Rico (the "Puerto Rico bankruptcy case"). Docket No. 29 at 2; see also Docket No. 29-1 (bankruptcy petition), No. 20-00031-MCF11 (Bankr. P.R.).  The Dumanians then moved to dismiss the Puerto Rico bankruptcy case.

8.      On January 28, 2020, Mesh, as a debtor in possession, filed an adversarial proceeding against the Dumanians and Intervenor Crosson, No. 20-00014-MCF (Bankr. P.R.)

9.      On February 11, 2020, Magistrate Judge Gallagher issued a written order granting the receiver motion (the "receiver order"). Docket No. 87. In the Order Magistrate Judge Gallagher concluded that "it does not appear that Schwartz will be harmed in any way if a receiver is appointed, as he too claims to be working in the best interest of Mesh Suture." *Id.* at ¶6. Magistrate Judge Gallagher appointed Cordes & Company LLP as the receiver. *Id.*

10.     On February 12, 2020, Mesh, as a debtor in possession, filed an adversarial proceeding against Wells Fargo, NA, No. 20-00024-MCF (Bankr. P.R.).

11.     On February 12, 2020, Schwartz (purporting to have authority to act on behalf of Mesh Suture) filed a Notice of Appeal. Docket No. 90.

12.     On February 13, 2020, Schwartz (purporting to have authority to act on behalf of Mesh Suture) also filed a Motion to Stay Pending Appeal, Docket No. 92. It is Schwartz's position that: "The funds held at Wells Fargo undeniably belong to Mesh … not any individual." Docket No. 92 at ¶ 21. "Title of the funds is not in question. The question here is who has the authority under the governance of the corporation to manage those funds." *Id*. at ¶ 15.

13.     On February 24, 2020, Mesh's Bankruptcy was dismissed; Mesh's Motion for Reconsideration remains pending; (**Exhibit 2**)

14.     On March 3, 2020, this Court Denied Schwartz's Motion to Stay based on jurisdictional and procedural grounds. Docket at 118; Schwartz's Appeal remains pending.

15.     On April 16, 2020, the receiver filed its Second Report, Docket No. 125 noting that: "Without someone clearly in control of the Company and until that issue is resolved through settlement, litigation or otherwise, there are significant challenges for the Receiver in evaluating whether to pay certain identified obligations or potential obligations." *Id.* at 5.

16.     On April 17, 2020, Mesh Suture, Inc. filed a multi-count Third Party Complaint against Plaintiff, Wells Fargo, NA and its parent company, Wells Fargo & Company, seeking damages in excess of $168M for breach of contract, fraud, willful and wanton conduct, civil conspiracy, and trespass to money and chattels within the Dumanians' Illinois Lawsuit (the Third-Party Complaint) **(Exhibit 3)**

17.     None of claims asserted by Mesh in the Third-Party Complaint against Wells none of claims or counterclaims by Mesh or any other party in Case No. 19-cv-677 against Wells Fargo seeks to claim or recover the funds in the Account. *Id*.

18.     On April 23, 2020, Schwartz and the other Mesh Parties filed a Motion for Summary Judgement on Counts I through IV of the Dumanians' Illinois Lawsuit which will resolve the control dispute. **(Exhibit 4).** That Motion is pending in the Northern District of Illinois. See No. 19-cv-06671 (N.D. Ill.) (Lee, J.). *Id*.

19.     On April 24, 2020, Schwartz filed a Disclaimer of Interest, Docket No. 132, disclaiming "any and all personal rights, title, lien, claim or interest in Mesh Suture's Wells Fargo bank account". **(Exhibit 5).**

20.     On April 24, 2020, Schwartz filed his Answer to Wells Complaint "denying has any ownership interest Mesh Suture's Wells Fargo because the Account and the funds in it belongs to Mesh Suture, Inc. and no one else." Docket No. 133 at ¶ 1; Schwartz further **denies that Wells Fargo is a disinterested stakeholder**, *Id*. at ¶ 4 **given that it** "bears direct responsibility for causing and fomenting the instant dispute and now seeks to interplead funds pursuant to 28 U.S.C. §§ 1335 in order to exculpate itself from any potential liability to the parties for its own wrongful conduct, including conduct that underlines its filing of this case." *Id*. at ¶ 1. (emphasis in the original)

21.     Schwartz has consented to Wells' deposit of Mesh's funds into either the Court Registry of this Court or the Court Registry of the US District Court for the Northern District of Illinois, Eastern Division where Dumanian's Illinois Lawsuit is pending, *Id.* at ¶ 4, 32, 31.

22.     To date, Wells Fargo has not deposited Mesh's funds into any Court's Registry, nor has it posted a bond in lieu of same.

23.     Wells' Motion seeks an Order of this Court (i) directing it to pay over the Restrained Proceeds into the court registry or financial institution as determined by the Receiver; (ii) dismissing Wells from this action with prejudice and discharging it from any further liability; (iii) permanently enjoining all Defendants from pursuing any further action or proceedings against Wells; and (iv) for attorney's fees and costs.

24.     For the reasons detailed herein, Defendant consents to Wells Fargo depositing Mesh's funds into the Court Registry in either Colorado or Illinois (or posting a bond in lieu of same), but opposes all other relief sought by Wells at this time.

## LAW AND ARGUMENT

25.     "An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader ... During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial." *Transamerica Life Ins. Co. v. Talley*, 2015 U.S. Dist. LEXIS 115458, citing *United States v. High Tech. Prods., Inc*., 497 F.3d 637, 641 (6th Cir. 2007).

26.     With respect to such equitable concerns regarding 28 U.S.C. § 1335, the 10th Circuit Court of Appeals long ago established that "Proceeding in nature of interpleader is in equity, and tortfeasor cannot obtain protection in such action against consequences of its own wrong"; *Holcomb v. Aetna Life Ins. Co., 228 F.2d 75* (10th Cir. 1955), cert. denied, 350 U.S. 986, 76 S. Ct. 473, 100 L. Ed. 853 (1956). The doctrine of "clean hands" applies to equitable remedy of interpleader such that a party

is not entitled to remedy of interpleader if hazard which party seeks to avoid has been occasioned by his own act. *Pan American Fire & Casualty Co. v. Revere*, 188 F. Supp. 474, 3 Fed. R. Serv. 2d (Callaghan) 400 (E.D. La. 1960).

27.     Wells Fargo brings this interpleader action pursuant to 28 U.S.C. § 1335, which requires, inter-alia that "1) the plaintiff has  possession of $500 or more of property; 2) two or more adverse claimants of diverse citizenship claim rights to the property; and 3) the plaintiff has deposited the disputed money or property, or a bond equivalent to the value of the disputed property, into the Court registry" in order for the district court to have jurisdiction. *Schneider v. Cate*, 405 F. Supp. 2d 1254, 1265 (D. Colo. 2005).

28.     The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Prudential Ins. Co. of Am. v. Brand,* 2017 U.S. Dist. LEXIS 84880. As the Court noted in *Prudential*, in every case and at every stage of the proceeding, a federal court must satisfy itself as to its own jurisdiction, even if doing so requires sua sponte action. *Id.* The District Court had jurisdiction to decide whether interpleader suit was properly before it and to decide who, as between oil carrier and trustee in bankruptcy of oil purchasing corporations, had possession of and title to oil in issue, in order to ascertain if it had jurisdiction of case and whether it should stay its proceedings. *Amoco Pipeline Co. v. Admiral Crude Oil Corp.*, 490 F.2d 114, Bankr. L. Rep. (CCH) ¶65112, 47 Oil & Gas Rep. 36, 13 U.C.C. Rep. Serv. (CBC) 1019 (10th Cir. 1974).

29.     Wells has more than $500 in its possession, so the first element is satisfied.

30.     However, given that Schwartz has disclaimed any interest in Mesh Suture's Wells Fargo bank account (the "Account"), there are no longer "two or more adverse claimants of diverse citizenship claim[ing] rights to the property" properly before this Court in these proceedings. Statutory interpleader requires two or more adverse claimants with diversity of citizenship claiming entitlement to the proceeds of the subject res. Am. Gen. Life Ins. Co. v. Henthorn, 2015 U.S. Dist.

LEXIS 127707. Requirement under 28 USCS § 1335 that there be adverse claimants to a particular fund is not met where only one claimant asserts claim on fund, and other claimants disclaim any interest in fund and rely on independent liability of stakeholder. *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 26 Fed. R. Serv. 2d (Callaghan) 725 (9th Cir. 1978).

31.     Given the foregoing, Wells cannot satisfy the second element, because the Dumanians purport to represent both themselves and Mesh, making them non-adverse.

32.     The Dumanians' waived service, answered and filed pleadings purportedly on Mesh Suture's behalf in these proceedings, Docket No. 9, 11. Wells Fargo permitted them to do so throughout the first stage of this interpleader proceeding without objection.

33.     Given that Schwartz has disclaimed interest with respect to the Mesh Suture bank account, there are presently **no** adverse claimants of diverse citizenship before this Court claiming rights to the subject res. This would also be the case even if the Dumanians prevail in the Illinois lawsuit, raising the question as to whether this Court presently has subject matter jurisdiction over the Account under 28 U.S.C. § 1335. *See Prudential Ins. Co. of Am. v. Brand*.

34.     Given Schwartz's disclaimer of interest, Wells can no longer invoke subject matter jurisdiction pursuant to 28 U.S.C. § 1335 via Schwartz.

35.     Nor can Wells realign and recast the Dumanians and Mesh as adverse claimants at this time. Whether or not the Dumanians and Mesh will later become adverse depends on the outcome of the control dispute, currently pending in Illinois.

36.     Nor can Wells establish jurisdiction at this stage via Intervenor Ms. Crosson[1] since she has not asserted any claim of entitlement to the proceeds of the subject res (*See* Docket No. 82, Answer of Ms. Crosson). Nor has Ms. Crosson opposed or filed any pleadings adverse to the Dumanians or

---

[1] Intervenor Crosson's status as Mesh board member is contingent upon Dumanian prevailing in the  Illinois Lawsuit.

Mesh Suture in these proceedings, only Schwartz.

37.     Because there are not two or more adverse claimants with diversity of citizenship claiming entitlement to the subject res, Wells cannot meet its burden to satisfy the second element of 28 U.S.C. § 1335.

38.     The third element under 28 U.S.C. § 1335 requires that the interpleader plaintiff deposit the disputed property into the registry of the court or post a bond with the court. *Aviva Life & Annuity Co. v. White* (*In re Millennium Multiple Employer Welfare Benefit Plan*), 772 F.3d 634; 28 U.S.C. § 1335. This statutory requirement is mandatory.

39.     To date, Wells has failed to satisfy the third element.

40.     Lastly, given the issue of only one claimant, as identified above, it is also worth briefly revisiting the threshold issue of whether Mesh Suture, Inc is even properly before this court at this time. In order to serve Mesh, a Puerto Rican Company, in Colorado, Wells was required to effectuate personal service on Mesh Suture, Inc. either through its Resident Agent (Schwartz) or by serving another person legally authorized to accept service on Mesh's behalf. Because the Dumanians' authority to have done so also depends on the outcome of the Illinois Lawsuit, Wells Fargo is unable to establish at this time that Mesh Suture, Inc. is properly before this Court.

41.     Likewise, aside from the Dumanians purported representation of Mesh, Mesh is not otherwise represented.[2]

42.     Before an interpleader plaintiff could proceed to trial of its claim to fund on deposit, it must establish jurisdiction in court by proper service on possible adverse claimants. *Republic of China v. American Exp. Co.*, 108 F. Supp. 169 (D.N.Y. 1952). It is thus Plaintiff Wells Fargo's burden to

---

[2] Counsel for the Receiver, Matthew Faga has confirmed that he does not represent Mesh. (**Exhibit 6**)

establish the jurisdiction of this Court by proper service on possible adverse claimants such as Mesh before it may legitimately proceed further within the proscribed scope of 28 U.S.C. § 1335.

43.      Wells has also failed to meet its burden with respect to other requirements pursuant to  28 U.S.C.  §  1335.  Assuming  the  stakeholder  has  properly  invoked  interpleader  and  the  court  has jurisdiction over the parties and the suit, during the first stage of an interpleader proceeding, the Court must also determine "whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader." *Transamerica Life Ins. Co. v. Talley*, 2015 U.S. Dist. LEXIS 115458, citing *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007). The burden is upon the stakeholder to establish this. *Williston Basin Interstate Pipeline Co. v. W. Gas Processors, Ltd.*, No. 88-A-612, 1988 U.S. Dist. LEXIS 17543, 1988 WL 73310, at *2 (D. Colo. July 8, 1988). As the Court recognized in *Transamerica*, citing *Amoco Prod. Co. v. Aspen Group*, 59 F. Supp. 2d 1112, 1114 (D. Colo. 1999)  "Interpleader is a  form  of  joinder  open  to  one  who  does  <u>not</u>  know  to  which  of  several  claimants  it  is  liable." (emphasis added)

44.      In situations similar to the case at bar, numerous courts have found jurisdiction lacking when there was no real or reasonable fear of double liability or vexation of conflicting claims because there was only one claimant, or there were two potential claimants but one of the claimants withdrew or disavowed all rights to the property. See *Indianapolis Colts v. Mayor & City Council of Baltimore*, 741 F.2d 954, 957 (7th Cir. 1984); *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 26 Fed. R. Serv. 2d (Callaghan) 725 (9th Cir. 1978); *Vanderlinden v. Metro. Life Ins. Co., 137 F. Supp. 2d 1160, 1164* (D. Neb. 2001); *Wright And Miller, Fed. Prac. & Proc*. § 1705 (3d ed. 2017) ("This requirement is not met when one of the claims clearly is devoid of substance, or one of the claimants . . . has dropped the claim . . ."). See also, *New York Life Ins. Co. v. Connecticut Dev. Authority, 700 F.2d 91*, citing *Libby*, supra, ("If one of two parties defendant has withdrawn his

claim . . . . interpleader relief is not warranted."). The adversity requirement means that interpleader is inappropriate if the stakeholder may properly be liable to both claimants. See *Bradley v. Kochenash*, 44 F.3d 166, 169 (2d Cir. 1995). Interpleader is meant to protect the stakeholder only from unjustified multiple liability.

45.     Here, Wells cannot satisfy its burden of proof with respect to its 'stakeholders' liability' requirement because in all cases, the Account belongs to only **one** claimant - Mesh Suture. This proposition holds true irrespective of who prevails in the Illinois Lawsuit. Unlike Transamerica, Wells cannot establish that it is "actually threatened with double or multiple liability" when there is only a single claimant to the subject res. *Id*.

46.     Interpleader is designed to protect stakeholder from multiple liability only when liability is based upon particular fund proffered by plaintiff, and if <u>more</u> than single obligation is owed, possibility of multiple recovery is justified; Here there is not more than a single obligation owed, the Account is the property of a corporate entity based in Puerto Rico, Mesh Suture, Inc. The Account does not belong to the Dumanians or Schwartz or Crosson, and so Wells faces no possibility of multiple recovery. Thus, there is no jurisdiction under 28 USCS § 1335 where all but one claimant disclaimed claim on fund and relied on independent liability of stakeholder. See *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 26 Fed. R. Serv. 2d (Callaghan) 725 (9th Cir. 1978).

47.     For this and other reasons explained herein, Defendant objects to the relief sought by Plaintiff, Wells Fargo. Even assuming *arguendo* that Wells can satisfy the jurisdictional requirements of 28 U.S.C. § 1335 to conclude the first interpleader stage, this matter is not ripe to proceed to the second. If Wells were dismissed at this time, unlike in *Transamerica*, it would not be possible to determine how to realign the parties in order to move on to the second interpleader stage. The control dispute in the Illinois Lawsuit must be resolved first. *Id.* Moreover, because the Illinois Lawsuit will resolve the issue of control over Mesh Suture, there will be no need for a second

interpleader stage.

48.     Wells also seeks a blanket discharge against any further liability to the Account as well as an order permanently enjoining all Defendants from pursuing any further action or proceedings against Wells. However, it is well-settled law in the 10th Circuit and elsewhere that a party seeking interpleader must be free from blame in causing the controversy, and where he stands as an alleged wrongdoer with respect to the subject matter of the suit or any of the claimants, he cannot have relief by interpleader. *Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229. A tortfeasor cannot obtain protection in an action in the nature of interpleader against the consequences of its own wrong, which Wells seeks to do here. *Id.*

49.     Here, as Mesh alleges in its Third-Party Complaint **(Exhibit 3)** and as Schwartz explains in his Answer, Docket No. 133 at ¶ 1, 4, Wells Fargo is not disinterested or free from blame in causing the instant proceedings. *Id.* Wells determined on September 24, 2019 to close Mesh's Account and informed Mesh that it would send Mesh a check for the full Account balance. *Id.* Had Wells done so, Mesh would not have had to file for bankruptcy, nor would it be in receivership. *Id.*

50.     Instead, Wells breached its depository agreement, reignited a previously settled corporate governance dispute, and only afterwards, two months later, did Wells file the instant action seeking blanket indemnity, and discharge, and permanent injunctive relief for all of its prior bad acts, not limited to the res at issue, and including acts for which Wells has previously pled guilty and paid out billions to settle.  *Id.*

51.     In view of the pending claims for damages brought by Mesh against Wells pending in Illinois and Puerto Rico, Wells is not entitled to receive binding determinations discharging, indemnifying, or insulating it from actions presently pending against it. Doing so would be premature. The propriety of discharging a stakeholder prematurely from liability was discussed in *Bank of Colorado v. Berwick*, 2011 U.S. Dist. LEXIS 34373. There, the court held that even in the

face of their motion for summary judgment on the issue, the plaintiff, Bank of Colorado, could not be released from liability because it was premature. *Id.*

52.     Here, Wells has not filed for summary judgment in this or any other Court, as to Mesh's claims against it. As such it would not be proper to grant Wells blanket indemnification, discharge, or enjoin lawsuits elsewhere in the wake of allegations that Wells is using the federal interpleader statute 28 U.S.C. § 1335, for an improper purpose, far beyond the outer limits of the subject res. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533-36, 87 S. Ct. 1199, 18 L. Ed. 2d 270 (1967).

53.     It is well-settled that the court's power to grant an injunction under the Interpleader statute is strictly limited to enjoining adverse claims to the identified stake. *Id.* ("In this situation, the fund itself is the target of the claimants. It marks the outer limits of the controversy."). In *State Farm*, the US Supreme Court concluded that the district court exceeded the powers granted by the interpleader statute when it also attempted to control claims against one of the other claimants. *Id.* The Court admonished against attempting to use the interpleader remedy "to solve all the vexing problems of multiparty litigation." *Id.* at 535. And it instructed that, <u>outside of adverse claims to the identifiable asset, litigants are allowed to resolve their claims in the forum of their choice</u>, subject to normal jurisdiction and venue rules. *Id.* at 536. (emphasis in original)

54.     As the 10th Circuit Court of Appeals further explained in *Millennium*, "Importantly, the interpleader remedy is not designed to consolidate all claims arising out of a single transaction or occurrence into one action. *Aviva Life & Annuity Co. v. White (In re Millennium Multiple Employer Welfare Benefit Plan*), 772 F.3d 634, citing *State Farm Fire*. To the contrary, the Supreme Court has expressly rejected the notion that interpleader functions as "an all-purpose bill of peace." *Id.* at 534-36. *Transamerica*.

55.     *In Millennium*, the Tenth Circuit held that, in a statutory interpleader action, the court may

enjoin any future actions claiming an interest in a single, identifiable stake, but lacks jurisdiction to enjoin other claims between the claimants and the stakeholder. *Id*. at 642. There, the 10th Circuit Court of Appeals noted that "other "decisions of this circuit have similarly affirmed interpleader's focus on adverse claims to an identifiable asset. For example, in *General Atomic Power Co. v. Duke Power Co*., we emphasized that the "mission of [the interpleader] statute is to administer a limited amount of property and conflicting claims . . . to that property." 553 F.2d 53, 57 (10th Cir. 1977). Similarly, in *Knoll v. Socony Mobil Oil Co*., we reversed the district court's injunction enjoining further claims against the interpleader plaintiff outside of the interpleader action, stating, "In an interpleader action, . . . jurisdiction extends only to the fund deposited with the court." 369 F.2d 425, 429 (10th Cir. 1966), overruled on other grounds by *Liberty Nat'l Bank & Trust Co. of Okla*. v. *Acme Tool Div. of the Rucker Co*., 540 F.2d 1375 (10th Cir. 1976); see also *N. Nat. Gas Co. v. Grounds*, 292 F. Supp. 619, 640 (D. Kan. 1968), aff'd in part, rev'd in part on other grounds, 441 F.2d 704 (10th Cir. 1971) ("In interpleader actions, . . . the subject matter of the action is not a set of facts, a transaction or occurrence which gives rise to the litigation, but a specific identified fund or property. Claims must not only relate to that property, but be asserted against it . ."

56.     Nor is Wells contractually entitled to such summary immunity and indemnification under the express terms of its Depository Agreement with Mesh. Significantly, in that Agreement, Wells is not entitled to indemnification if it fails to exercise ordinary care or otherwise fails to comply with its Depository Agreement  (**<u>Exhibit 7</u>**)

57.     Under these circumstances, Plaintiff Wells Fargo is not entitled to discharge or indemnification in respect to Mesh's Account for its handling of the Account and its treatment of the parties prior to the time it filed the instant suit.

58.     Nor is Plaintiff, Wells Fargo entitled under these circumstances to recover its attorneys'

fees and costs against Mesh Suture's Account.

59.      As this court noted in Transamerica Life Ins. Co. v. Talley 2015 U.S. Dist. LEXIS 115458, "the Tenth Circuit has recognized the "'common practice' of reimbursing an interpleader plaintiff's litigation costs out of the fund on deposit with the court." *Transamerica Premier Ins. Co. v. Growney*, 1995 U.S. App. LEXIS 31836, 1995 WL 675368, at *1 (10th Cir. Nov. 13, 1995) (unpublished) (citing *United States Fidelity & Guar. Co. v. Sidwell*, 525 F.2d 472, 475 (10th Cir. 1975)). Fee awards are within the discretion of the Court, see id., and are "normally awarded to an interpleader plaintiff who (1) is disinterested (i.e., does not itself claim entitlement to any of the interpleader fund); (2) concedes its liability in full; (3) deposits the disputed fund in court; and (4) seeks discharge, and who is not in some way culpable as regards the subject matter of the interpleader proceeding." *Id.*

60.      In *Transamerica*, the Plaintiff was able to satisfy each of those conditions. Here, Wells cannot satisfy those conditions because Schwartz (and Mesh, in its Third-Party Complaint in Dumanians' Illinois Lawsuit) have alleged that Wells (1) is not disinterested; (2) has not conceded its liability in full; (3) has not deposited the disputed funds in Court; and (4) is alleged to be culpable as regards the subject matter of the interpleader proceeding. See **Exhibit 3**; Schwartz Answer, Docket No. 133.

61.      Further, as to the last element, it would be premature and improper to award Wells its attorney's fees and costs in this summary fashion, when Mesh has countersued Wells and, if successful, Wells could be liable to Mesh for significant damages that far exceed Wells' claimed $56,000 in fees.

62.      Under these circumstances, this Court should either deny Wells' request for attorney's fees and costs outright or hold the entire issue of Wells' fees in abeyance should this court not decide to dismiss Plaintiff's Complaint, *sua sponte*, for lack of jurisdiction pursuant to 28 U.S.C. § 1335.

**REPECTFULLY SUBMITTED.**

DATED this 24th day of April 2020.

s/Mark A. Schwartz, Esq.,
_____

Mark A, Schwartz, Esq. (Co Bar # 38364)
Tax Lien Law Group, LLC
425 Carr 693, Suite 1-381
Dorado, Puerto Rico 00646
312-810-2220
maschwartz@tllgrp.com

*Appearing, Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

s/Mark A. Schwartz, Esq.